IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MYRON ANTHONY HAUGHTON, )
               )
   Petitioner,         )
               )
   v.              )  1:16-CV-634 (LMB/IDD)
               )
JEFFREY CRAWFORD, et al.,     )
               )
   Respondents.        )

MEMORANDUM OPINION

Before the Court is respondents' Motion to Alter or Amend the Judgment [Dkt. No. 17], in which the respondents petition the Court to reconsider the bond procedures established by the Memorandum Opinion [Dkt. No. 12] and Order [Dkt. No. 13] of October 7, 2016 and instead require an immigration officer to make a bond determination in accordance with the procedures established in 8 C.F.R. § 236.1, which places the burden of proof on the alien and provides that, to the extent the petitioner is dissatisfied with that determination, he may appeal to an Immigration Judge (IJ) and the Board of Immigration Appeals (BIA).

This civil action arises out of a habeas petition filed by petitioner Myron Anthony Haughton, who has been held in pre-removal detention for over a year. He has been detained since October 2015 and is subject to mandatory pre-removal detention pursuant to 8 U.S.C. § 1226(c), which applies to certain categories of criminal aliens, due to a series of burglary convictions earned while he was a teenager. Compl., [Dkt. No. 1] ¶ 1. In May 2016, an IJ waived petitioner's criminal convictions based on a finding of "exceptional and extremely unusual" hardship to his wife and two children—all U.S. citizens—and granted him permanent residency. Id. The government timely appealed the IJ's decision to the BIA. Id. Haughton subsequently petitioned for

a writ of habeas corpus, arguing that due process entitles him to an individualized bond hearing. Id. ¶ 2.

In a Memorandum Opinion dated October 7, 2016, this Court held that "the serious constitutional concerns raised by prolonged detention require implying a reasonable time limitation in § 1226(c)" and concluded that petitioner's detention had become unreasonable. [Dkt. No. 12] at 13, 18. Drawing on this conclusion, the Court ordered the government to provide petitioner with an individualized bond hearing within 30 days. [Dkt. No. 13]. With respect to the procedural framework for the hearing, the Court found that "neither the government nor the petitioner has made any argument about either the burden or standard of proof." [Dkt. No. 12] at 22. Therefore, "in the interest of uniformity," the Court adopted "the framework established by the Second, Third, and Ninth Circuits," which the Court erroneously described as the only courts of appeals to explicitly address these issues, and held that "the government must release the petitioner unless it can establish by clear and convincing evidence that he poses a risk of flight or a risk of danger to the community." Id. at 22.

As explained in the respondents' motion for reconsideration, contrary to the Court's statement in the Memorandum Opinion, respondents did briefly address the procedural framework for the bond hearing, admittedly in a two-sentence footnote on the signature page of their Motion for Summary Judgment, citing to the Eleventh Circuit decision in Sopo v. U.S. Attorney Gen., 825 F.3d 1199, 1219-20 (11th Cir. 2016), see [Dkt. No. 4] at 26 n.11. Because the Eleventh Circuit's discussion of the appropriate standard had not been fully briefed, the Court granted the parties' request to submit additional briefing on this question. Order of Oct. 17, 2016, [Dkt. No. 16]. The issue has now been fully briefed and, after considering the arguments advanced by the parties, this Court declines the respondents' request that it reconsider the procedural framework set forth in the

2

Memorandum Opinion.

Requiring the government to both bear the burden of proof and prove its case by clear and convincing evidence is consistent with the demands of due process. As the Supreme Court has explained, "due process places a heightened burden of proof on the [government]" in civil proceedings where an individual's liberty interests are threatened. See Cooper v. Oklahoma, 517 U.S. 348, 363 (1996). "Freedom from imprisonment" lies "at the heart of the liberty interest" protected by the Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). In keeping with this principle, "government detention violates that Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections, or, in certain special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." Id. (internal citations omitted). But, even in this narrow subset of circumstances where detention is permissible, the government is generally required to satisfy the burden of establishing that detention is merited in an individual case. For example, in both pretrial detention, United States v. Salerno, 481 U.S. 739, 751 (1987), and civil commitment, Addington v. Texas, 441 U.S. 418 (1979), the government must establish the necessity of detention by clear and convincing evidence. According to the Supreme Court, this procedural framework "strikes a fair balance between the rights of the individual and the legitimate concerns of the state." Id. at 431. Stated differently, "due process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" Casas-Castrillon v. Dep't of Homeland Sec., 535 F.3d 942, 950 (9th Cir. 2008) (quoting Zadvydas, 533 U.S. at 690). As the constitutional encroachment increases, so too must the attendant procedural protections.

3

In petitioner's case, the Court has already concluded that the duration of his year-long detention has become unreasonable and ongoing detention without a bond hearing infringes his right to due process. In light of this ongoing infringement, the balance between individual and government interests requires that the burden of justifying petitioner's continued detention falls upon the government. See Matthews v. Eldridge, 424 U.S. 319, 334-35 (1976) (explaining that the dictates of due process depend on the private interests affected, the risk of erroneous deprivation of those interests, and the government's interests).

In addition to conforming to the framework adopted by the Second, Third, and Ninth Circuits, Lora v. Shanahan, 804 F.3d 601, 605 (2d Cir. 2015) ("[A] detainee must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community."); Diop v. Ice/Homeland Sec., 656 F.3d 221, 226 (3d Cir. 2011) ("[T]he Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute."); Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011) ("[T]he government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond . . . ."), this approach is consistent with the Fourth Circuit's analysis in an analogous context. See United States v. Comstock, 627 F.3d 513 (4th Cir. 2010). In Comstock, the court was asked to determine whether 18 U.S.C. § 4248, a civil commitment statute applicable to sex offenders which requires the government to prove by "clear and convincing evidence that the certified person has engaged or attempted to engage in sexually violent conduct or child molestation and is sexually dangerous to others," affords adequate procedural protections. Id. at 515 (internal citation omitted). The court concluded that, because the government bore the burden of demonstrating by clear and convincing evidence that individualized detention fulfills the commitment statute's purpose, the provision was

4

constitutional. Id. at 524-25. In reaching this conclusion, the Fourth Circuit emphasized that the Supreme Court "has never retreated" from its long history of mandating a similar proof scheme in civil commitment proceedings. Id. at 524 (collecting cases).

Pre-removal detention is a form of civil, not criminal detention. Therefore applying the traditional burden and quantum of proof to petitioner's bond hearing is appropriate. This standard is also consistent with what appears to be the only other case in the Fourth Circuit to address this question. See Jarpa v. Mumford, No. CV PX 16-2649, 2016 WL 5661659 (D. Md. Sept. 30, 2016). There, the court concluded that § 1226(c) contains an implicit reasonable time limitation and ordered that the petitioner be afforded an individualized bond hearing where the burden is on the government to demonstrate by clear and convincing evidence that petitioner was either a flight risk or a danger to the community. This procedural framework was adopted based on the court's conclusion that, in "the context of civil commitment proceedings, the Supreme Court time and again has rejected laws that place on the individual the burden of protecting his or her fundamental rights." Id. at *12. The court also placed great weight on its conclusion that the petitioner "had already been deprived of a liberty interest under circumstances which violate his right to due process." Id. at *13.

The respondents' primary argument is that petitioner's bond hearing should conform to the procedural framework set forth in 8 C.F.R. §§ 236.1(c)(8), (d)(1), (d)(3), which provides that an immigration officer "may" release an alien detained under § 1226(a) on bond if "the alien ... demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding" and permits the alien to appeal the decision to an IJ and subsequently to the BIA. [Dkt. No. 17] at 1; Def. Memo., [Dkt. No. 18] at 6 (citing Sopo, 825 F.3d at 1219-20). Although these regulations are relevant

5

insofar as they pertain to removal proceedings, they are distinguishable from petitioner's situation in at least two respects. First, the § 236.1 regulation applies to hearings that arise under 8 U.S.C. § 1226(a)—namely, instances where aliens are detained at the discretion of the Attorney General following the issuance of an individualized warrant. Petitioner, by contrast, is detained pursuant to § 1226(c), which is a mandatory provision that affords aliens no individualized consideration at the outset of their detention. Second, while pre-removal detention pursuant to § 1226(a) is presumptively consistent with due process and bond is available at the discretion of the Attorney General, the same is not true for petitioner. Rather, according to this Court's finding, his individualized bond hearing is necessary in order to avoid the serious due process concerns brought about by his prolonged and indefinite detention under § 1226(c). [Dk. No. 12] at 21. In light of these important distinctions, the regulations that apply to discretionary bond determinations under § 1226(a) have limited probative value in the context of petitioner's unreasonably prolonged detention. Rather, precisely because petitioner's detention raises due process concerns, he is entitled to more robust procedural protections.

Respondents resist this conclusion, arguing that, under the Court's standard, individuals who committed a § 1226(c) predicate offense effectively receive stronger protections than § 1226(a)'s non-criminal detainees. [Dkt. No. 18] at 7-8 (citing Sopo, 825 F.3d at 1219-20). But this is a distortive characterization. The more correct framing is that an individual whom the court determines is being detained unreasonably is entitled to more protections than someone whose detention is presumptively reasonable—that is to say, aliens held for a reasonable amount of time

under either § 1226(a) or § 1226(c).[1] Further, placing the burden on petitioner is inconsistent with this Court's finding that his ongoing detention violates due process. [Dkt. No. 12] at 21. Were the Court to place the burden on petitioner, this would "logically mean that he is presumed validly and constitutionally detained unless he demonstrates otherwise." Jarpa, 2016 WL 5661659, at *13 (emphasis in original).

The respondents go on to argue that 8 U.S.C. § 1226(c)(2), the provision governing the witness protection exception to mandatory pre-removal detention for criminal aliens, further supports their proposed standard. [Dkt. No. 18] at 7. In that context, "the alien" must demonstrate that he "will not pose a danger" or flight risk. See 8 U.S.C. § 1226(c)(2). But, this argument fails for the same reason as the § 236.1 analogy—the key factor in petitioner's case is not that he is an alien subject to pre-removal detention or even that he is a criminal alien who has been mandatorily detained pursuant to § 1226(c), but that his detention has become unreasonable. Therefore the standard set forth in § 1226(c)(2), which applies when detention is presumptively reasonable, is inapposite.

Respondents' argument that the Court's procedural framework is inconsistent with the standard established in Zadvydas is similarly unpersuasive. [Dkt. No. 18] at 8. In Zadvydas, aliens who were subject to final removal orders but could not be removed because no country was willing to accept them challenged their detention past the expiration of the 90-day removal period set forth in § 1231(a). 533 U.S. at 684-85. After determining that post-removal detention must be limited to a reasonable time, the Court established that if, after six months in detention, an alien "provides

---

[1] While neither party has cited cases where aliens challenged the reasonableness of their detention under § 1226(a), arguably placing the burden on the government would be equally appropriate were a court to agree that detention was unreasonable.

good reason to believe" removal was unlikely in the foreseeable future, the government must either demonstrate that removal was likely or grant the alien an individualized bond hearing. Id. at 689-701. Even if respondents are correct that Zadvydas places the burden of proof on the government, [Dkt. No. 18] at 8,[2] this is immaterial because that case did not deal with the procedural framework for a bond hearing. There, the Supreme Court proposed a single test for determining whether a post-removal alien should be released or remain in detention. In the context of § 1226(c), this Court, like other courts that have addressed this issue, adopted a two-step approach that first assesses the reasonableness of detention and then, where detention is unreasonable, affords aliens an individualized bond hearing. Because the inquiries are separate, and because this Court has already determined that petitioner's ongoing detention is unreasonable, [Dkt. No. 12] at 21, placing the burden of proof on the government is not inconsistent with Zadvydas.

Finally, respondents argue that basic principles of administrative law require deference to the agency's regulations. [Dkt. No. 18] at 8 (citing Sopo, 825 F.3d at 1219). Although such deference is appropriate in certain contexts, no such deference is warranted here. First, as explained above, the regulations to which the respondents cite are from § 1226(a), under which the availability of bond is at the discretion of the Attorney General. Here, a bond hearing is not

---

[2] Although the text of Zadvydas strongly suggests that the Supreme Court established only the burden of production, as the Fourth Circuit has observed, "the exact parameters of the Zadvydas holding are unclear." Welch v. Ashcroft, 293 F.3d 213, 235 (4th Cir. 2002) (Williams, J. concurring), abrogated on other grounds by Demore v. Kim, 538 U.S. 510 (2003). Although some courts have concluded that the case simply assigned aliens the burden of production, see Crespo v. Baker, No. 11-CV-3019 - IEG POR, 2012 WL 1132961, at *4 (S.D. Cal. Apr. 3, 2012), others have held that aliens bear the burden of proving that no likelihood of removal exists, see, e.g., Andrade v. Gonzales, 459 F.3d 538, 543 (5th Cir. 2006).

discretionary; it is required by due process. [Dkt. No. 12] at 21. Second, agencies are not entitled to deference when their interpretations conflict with constitutional principles. See Diouf v. Napolitano, 634 F.3d 1081, 1090 (9th Cir. 2011) ("We may not defer to [an agency's] regulations interpreting [a statute] . . . if they raise grave constitutional doubts."); accord Miller v. Johnson, 515 U.S. 900, 923 (1995) (noting it is "inappropriate for a court engaged in constitutional scrutiny to accord deference to [an agency's] interpretation of [a statute]"); Nat'l Mining Ass'n v. Kempthorne, 512 F.3d 702, 711 (D.C. Cir. 2008) ("[The] canon of constitutional avoidance trumps Chevron deference, and we will not submit to an agency's interpretation of a statute if it presents serious constitutional difficulties." (citation and internal quotation marks omitted)).[3] In light of the conclusion that the duration of petitioner's detention under § 1226(c) violates his right to due process, deference to the regulations in 8 C.F.R. § 236.1 is unwarranted. Rather, the significant deprivation of liberty warrants the robust procedural protections afforded by requiring the government to demonstrate by clear and convincing evidence that petitioner's ongoing detention is appropriate to protect the community and ensure petitioner's appearance at future proceedings. For these reasons, respondents' Motion to Alter or Amend the Judgment [Dkt. No. 17] will be denied by an Order to be issued with this Memorandum Opinion.

Entered this 28th day of October, 2016.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

---

[3] Among those constitutional difficulties is the lack of any definite standard provided for the decision maker. The regulation simply provides that the alien prove "to the satisfaction" of the immigration officer considering bond that the alien is bondable.